IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DENISE MCKINNEY           :     CIVIL ACTION
                          :
    Plaintiff,            :     NO. 08-1054
                          :
        v.                :
                          :
DELAWARE COUNTY MEMORIAL  :
HOSPITAL, ET AL.          :
                          :
    Defendants.           :

MEMORANDUM OPINION                                March 20, 2009

TUCKER, J.

Presently before the Court are Defendants' Delaware County Memorial Hospital (hereinafter "DCMH") and Crozer-Keystone Health System, Inc.'s (hereinafter "Crozer") Motion to Compel an Executed Medical Authorization and Plaintiff's Response to Discovery Requests Related to Her Medical Records, and Plaintiff's Response in Opposition to. For the reasons set forth below, the Court will grant Defendants' motion and Plaintiff will be ordered to either produce the information requested, or have her claims for emotional distress damages stricken.

I.    **Factual and Procedural Background**

Plaintiff Denise McKinney was employed by Defendants for over thirty years before resigning. (Pl.'s Am. Compl. ¶ 8). Ms. McKinney alleges that she was constructively discharged from her employment with Defendants. (Pl.'s Am. Compl. ¶ 1). The specific events that precipitated Plaintiff's resignation are as follows. On October 25, 2005, Plaintiff met with Helene Burns, DCMH's Director of Nursing, and Susan Delaney, DCMH's Director of Human Resources, where she was informed that DCMH had suspicions that she was illegally diverting a

1

number of Percocet pills for her own personal use. (Pl.'s Am. Compl. ¶¶ 8-9). Plaintiff denied said allegations, but was ordered to enroll in Pennsylvania's Impaired Nurse Voluntary Recovery Program (hereinafter "VRP"), which treats medical professionals addicted to prescription drugs and/or alcohol. (Pl.'s Am. Compl. ¶¶ 11-14). In January 2006, prior to enrolling in the VRP, Plaintiff submitted to a mental health evaluation by Karen Levin, a licensed clinical social worker, who indicated that Plaintiff did not have a dependency problem and was, therefore, ineligible for the program. (Pl.'s Am. Compl. ¶ 17). Having not enrolled in or completed the program, on February 26, 2006, Plaintiff was informed by DCMH that she could only return to work in an administrative capacity stripped of her patient care or supervisory duties. (Pl.'s Am. Compl. ¶ 18).

Concurrently, beginning in October of 2005, the State was conducting its own independent investigation into DCHM's allegations against Plaintiff. (Pl.'s Am. Compl. ¶ 18). Unsure of how long the State's investigation might continue and unwilling to work in an administrative capacity with unresolved allegations of drug diversion and abuse swirling around her, Plaintiff resigned from DCMH on March 8, 2006. (Pl.'s Am. Compl. ¶ 20). After Plaintiff's resignation, the State's investigation continued and she was required to submit to a mental and physical examination by Dr. George Woody, on August 13, 2007. (Pl.'s Am. Compl. ¶ 21). The State eventually concluded that there was insufficient evidence with which to prosecute Plaintiff and closed its file against her on December 26, 2007. (Pl.'s Am. Compl. ¶ 23).

Subsequently, Plaintiff filed the instant action in the Eastern District of Pennsylvania, citing the Court's original jurisdiction under 28 U.S.C. § 1331. Plaintiff's Amended Complaint seeks equitable relief and monetary damages for the deprivation of rights secured by the

Rehabilitation Act, 29 U.S.C. § 794. Plaintiff alleges that Defendants' actions caused her humiliation, and loss of employment and compensation. (Pl.'s Am. Compl. ¶¶ 1). In addition to other damages, Plaintiff seeks compensatory damages for her emotional distress, alleging that she "has suffered emotionally as a result of the allegations by DCMH." (Pl.'s Response at 1). Specifically, Plaintiff contends that she "was depressed and withdrew both emotionally and physically from her husband and her extended family" and that she "cries on a regular basis over the hurt Defendants' actions caused." (Pl.'s Response at 1).

On November 26, 2008, Defendants propounded to Plaintiff its First Set of Interrogatories, in which Defendants asked Plaintiff to provide identification information for each medical provider whom she sought or received medical or psychological treatment from October 2001 to the present. (Def.'s Mem. of Law, Ex. 1 at 5). Plaintiff's response to this interrogatory was:

> Plaintiff objects to this interrogatory as she has not waived any physician patient privilege. She has only filed a garden variety request for emotional distress damages. Furthermore, without waiving said objection any treatment prior to the events in question do not reflect on plaintiff's damages and therefore are not relevant or reasonably calculated to lead to the discovery of admissible evidence.

(Pl.'s Response at 3).

Because Plaintiff alleges emotional distress in her Amended Complaint, Defendants continued to make efforts to obtain Plaintiff's medical and psychological records. After several failed attempts to resolve this discovery dispute and get Plaintiff to release her medical records and sign an Authorization, Defendants filed the instant motion. To date, Plaintiff has provided an executed Authorization for the release of the report taken by Dr. Woody on August 13, 2007 and

3

has indicated, but has yet to supply, that records for medical treatment and counseling are forthcoming from all other providers *prior* to August 13, 2007. (Pl.'s Mem. of Law at 2).

**II.     Discussion**

"Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b)(1). Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). The Supreme Court has definitively held that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." Jaffee v. Redmond, 518 U.S. 1, 15 (1996).

Defendants assert that they are entitled to Plaintiff's medical and psychological history and records for two reasons. First, relying on the "broad view" of waiver, Defendants contend that because Plaintiff seeks damages for emotional distress they are entitled to discovery of Plaintiff's medical and psychological records. Second, Defendants argue that they reasonably suspected Plaintiff of illegally diverting controlled narcotics from patients for her own personal use. Thus, because Plaintiff denied these allegations, Defendants assert that they are entitled to assess the credibility of her denials by exploring her medical history for any documented history of drug abuse, or for medical conditions for which the allegedly diverted drugs might have been used by Plaintiff.

4

Plaintiff, relying on the "narrow view" of waiver, objects to the production of her *current* medical history arguing that her current medical condition is not at issue.[1] In essence, Plaintiff asserts that the records for any medical treatment she has received since Dr. Woody's evaluation in August of 2007 are irrelevant because they shed no light on Plaintiff's mental condition at the time of incident in 2005 and 2006. Plaintiff argues this is particularly true where she has merely asserted a "garden variety" claim for emotional distress damages, has not seen any professional therapists for treatment, and does not intend to rely on expert testimony regarding her emotional distress damages at trial. In addition, Plaintiff objects arguing that she has not affirmatively placed her medical condition at issue in this action.

*A. Relevance*

While apparently conceding that her medical records and history through the time of Dr. Woody's evaluation in August of 2007 are relevant, Plaintiff asserts that her *current* medical records are not. Before discussing relevance, the Court notes that Plaintiff's Amended Complaint is not clear as to whether Plaintiff is asserting a claim for continuing emotional stress damages, or if the emotional distress damages she claims are attributable to Defendants are cut off at some

---

[1] As noted, Plaintiff has agreed to provide a release for her medical records through August 13, 2007, the date of her examination by Dr. Woody. Thus, the current discovery dispute is focused on Plaintiff's medical records from August 13, 2007 to the present date.

past date certain.[2] Regardless, Plaintiff's claim that the only time period for which her medical records are relevant is October 2005 through early 2006, (Pl.'s Mem. of Law at 2), is unavailing.[3]

Defendant has argued that both Plaintiff's past and current medical records are relevant because they may disclose whether she actually suffered from emotional distress attributable to her resignation, or whether she suffered from some other unrelated emotional stress, which would mitigate Plaintiff's emotional distress claim against Defendants. Furthermore, Defendant has argued that the past and current records are both necessary to fully flesh out the extent, if any, of Plaintiff's drug use and with it any possible defense Defendants might have against this action. It is axiomatic that, at the discovery stage of litigation, the evidence sought to be obtained need only

---

[2] Plaintiff words most of her claims in her Amended Complaint in the past tense, as if she is not making a claim for continuing emotional distress damages. Yet, Plaintiff has made no effort either in her Amended Complaint, or in any of her other submissions to the Court to appropriately limit her emotional distress damages against Defendant within a specified date certain. Hence, if Plaintiff is not claiming current or continuing emotional distress, she should cut off her claim for emotional distress damages at a specific defined earlier point and not seek emotional distress damages against Defendants going forward from that point.

[3] For several reasons, the Court is persuaded that Plaintiff's current mental condition is genuinely in controversy in this action and should, therefore, be open for discovery. First, to the extent that Plaintiff alleges her emotional stress has a continuing impact on her mental state, then her current mental condition is in issue. Such allegations are evidenced by Plaintiff's Interrogatory Responses, in which she claims that she continues to cry "on a regular basis over the hurt Defendants' actions caused," (Pl.'s Response at 1), and that she cannot "take the stress of working in a patient care setting and be subject to the possibility that she would be falsely accused of diverting medications." (Pl.'s Response at 3). Second, Defendants indicate that a significant part of their defense revolves around the issue of Plaintiff's alleged drug use. Thus, discovery on the issue of Plaintiff's alleged past and possibly present drug abuse is relevant. Third, the premise underlying the protection afforded to current mental health records is that disclosure might threaten the integrity of a patient's sessions with his or her doctor. Here, however, Plaintiff has indicated that she did not seek treatment for the emotional stress caused by Defendants and that she is not currently undergoing treatment, thereby undermining the lynchpin of protection for current mental health treatment records. In general, however, Plaintiff's Amended Complaint seemingly refers to her alleged disability in the past tense, largely concerning her mental state from 2005 to 2007–the time in which DCMH investigated the above referenced allegations against Plaintiff. Hence, the Court concludes that while Plaintiff's current mental state is relevant to this litigation, it is only relevant to the limited extent described above.

be relevant and "need not be admissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). Thus, the Court finds that Plaintiffs past and present records are relevant to this case and could lead to the discovery of admissible evidence.

*B. Privilege*

Though the Court concludes that Plaintiff's medical history and records are relevant, the Court must also determine if the psychotherapist-patient privilege shields them from discovery. The Supreme Court has stated that the psychotherapist-patient privilege may be waived, Jaffee, 518 U.S. at 15 n. 14, however, neither they nor the Third Circuit has declared with particularity the circumstances that constitute waiver, instead leaving such determinations to be made on a case by case basis.

Therefore, it is not surprising that Defendant cites several cases under the broad view of waiver that indicate waiver is effectuated when a plaintiff places his or her emotional condition at issue by alleging emotional distress damages in his or her complaint. See, e.g., Sarko v. Penn-del Directory Co., 170 F.R.D. 127, 130 (E.D.Pa. 1997) (holding that "a party waives the privilege by placing her mental condition at issue"); Topol v. Trustees of the Univ. of Pa., 160 F.R.D. 476, 477 (E.D.Pa. 1995) ("Having placed her mental state in issue, plaintiff waived any applicable psychotherapist-patient privilege."). Plaintiff, alternatively, relies on several cases under the narrow view, which indicate that waiver is only effective where a plaintiff makes affirmative use of the privileged material in connection with the case. See, e.g., Fritsch v. City of Chula Vista, 187 F.R.D. 614 (S.D.Cal. 1999) (holding that the psychotherapist-patient privilege is waived only

when the plaintiff either calls his or her therapist as a witness, or introduces the substance of the communications themselves as evidence); Hucko v. City of Oak Forest, 185 F.R.D. 526, 531 (N.D.Ill. 1999) (holding that plaintiff did not waive psychotherapist-patient privilege in seeking emotional distress damages where he did not put at issue his consultations or treatments).

Having thoroughly reviewed the case law supporting both the broad and narrow views of waiver, this Court agrees with its sister courts in the Third Circuit who have heard the same issue that the broad view of waiver best serves the interests of parties to a litigation while adequately addressing fairness concerns. See, e.g., Lanning v. Southeastern Pennsylvania Transp. Auth., No. Civ.A. 97-953, 1997 WL 597905, at *2 (E.D.Pa. Sept. 17, 1997) (declaring that a "party waives the federal common law psychotherapist-patient privilege by placing his/her mental condition at issue[,]" and "[r]ather than creating a 'chilling effect'…disclosure of the information requested by defendants is required in the interest of fairness and justice."); Topol, 160 F.RD. at 477 (finding that plaintiff placed her mental state in issue by seeking damages for mental and emotional suffering); Jackson v. Chubb Corp., 193 F.R.D. 216, 226 (D.N.J. 2000) ("In the interests of justice, the broader 'at issue' approach caters to both the plaintiff's and the defendant's respective interests in a lawsuit and embraces the reality that a party to a lawsuit must always choose which claims or defenses to pursue and which ones to forego, recognizing that the success of certain claims and defenses hinges on disclosure of confidential personal or financial information, as well as waiver of certain privileges.").

This Court agrees for several reasons. First, our Court, which recognized a federal common law psychotherapist-patient privilege prior to Jaffee, see Mines v. City of Philadelphia, 158 F.R.D. 337 (E.D.Pa. 1994); Siegfried v. City of Easton, 146 F.R.D. 98 (E.D.Pa. 1992), has

8

previously held that a party waives the privilege by placing their mental condition at issue. See Topol, 160 F.R.D. at 477; Lanning, 1997 WL 597905, at *2. Second, the privilege has been analogized by the Supreme Court in Jaffee to the attorney-client privilege, which is waived when counsel's advice is placed at issue. See, e.g., Glenmede Trust Co. v. Thompson, 56 F.3d 476, 486 (3d Cir. 1995); see also Rost v. State Bd. of Psychology, 659 A.2d 626, 629 (Pa. Cmwlth. 1995) (reasoning that Pennsylvania's statutory psychotherapist-patient privilege is waived by placing communications at issue by analogy to the state's attorney-client privilege), app. denied, 543 Pa. 699 (1995). Finally, the Court agrees that allowing a plaintiff "to hide…behind a claim of privilege when that condition is placed directly at issue in a case would simply be contrary to the most basic sense of fairness and justice." Premack v. J.C.J. Ogar, Inc., 148 F.R.D. 140, 145 (E.D.Pa. 1993).

In seeking, however, to have this Court apply the narrow waiver doctrine to the facts of this case, Plaintiff's counsel relies heavily on the assertion that Plaintiff has only filed a "garden variety" claim for emotional distress against Defendants. (Pl.'s Mem. of Law at 1). Plaintiff's reliance on this garden variety language, however, is misplaced. Indeed, courts have consistently made a distinction between the "in controversy" requirement in the context of Rule 35(a) and Rule 26(b). See, e.g., Turner v. Imperial Stores, 161 F.R.D. 89, 95 (S.D.Cal. 1995) (noting that under Rule 35(a) "a court will order plaintiffs to undergo mental examinations when, in addition to a claim of emotional distress, one or more of the following elements are present: (1) a cause of action for intentional or negligent infliction of emotional distress; (2) an allegation of specific mental or psychiatric injury or disorder; (3) a claim of unusually severe emotional distress; (4) plaintiff's offer of expert testimony to support a claim of emotional distress; and/or (5) plaintiff's

9

concession that his or her mental condition is 'in controversy' within the meaning of Rule 35(a)."). Notably, Defendants have moved to compel pursuant to Rule 26(b) because at issue here is Plaintiff's psychological and medical records–governed by Rule 26(b)–not compelling Plaintiff to undergo a psychiatric evaluation–governed by Rule 35(a). See, e.g., Bowen v. Parking Auth. of City of Camden, 214 F.R.D. 188, 195 (D.N.J. 2003). Thus, while demonstrating the presence of an additional element, other than the mere filing of a claim for emotional distress damages, may be necessary to satisfy the "in controversy" prong when a Defendant moves pursuant to Rule 35(a), such is not necessarily the case when a Defendant moves, as here, pursuant to Rule 26(b).

Similarly, while Plaintiff's assertion that she can and will establish emotional stress damages without resort to expert testimony is technically sound, it misses the point. Obviously, Plaintiff may establish her emotional stress damages with her own or other lay testimony. The issue, however, is not how Plaintiff intends to prove her emotional distress damages, but, rather Defendants' right to defend themselves fully against Plaintiff's claims. See Sanchez v. U.S. Airways, Inc., 202 F.R.D. 131, 136 n. 7 (E.D.Pa. 2001) ("How the Plaintiffs decide to prosecute their claims is a tactical decision for them alone. But, the determination of relevant evidence is outside their purview…none of the cases stated...stand for the idea that just because Plaintiffs do not intend to use expert testimony, the records related to their use of a mental health professional is inviolable."); Lowe v. Philadelphia Newspapers Inc., 101 F.R.D. 296, 298 (E.D.Pa. 1983) (reasoning that defendants should have a right to inquire into a plaintiff's past for the purpose of showing that their emotional distress was caused, at least in part, by events and circumstances that were not job related). Thus, the Plaintiff's affirmative use, or not, of medical expert

10

testimony is not dispositive. See Thorne v. Universal Properties, Inc., 1987 WL 7683, at *2 (E.D.Pa. Mar. 10, 1987) ("If a plaintiff seeks damages for alleged emotional or psychological injuries, the defendant's case ought not be limited by the plaintiff's decision not to introduce available medical or psychological testimony that bears directly on the truth of the claim.").

The Court has already concluded that Plaintiff's psychological history is relevant to Plaintiff's claim that her emotional stress stems from her employment and resignation from Defendants. Indeed, Plaintiff's past and present records may show the presence of certain stress factors that pre-dated her conflict and resignation at work, or that other factors unrelated to this litigation occurred after her resignation, which may serve to mitigate or extinguish Plaintiff's emotional stress claims. Hence, in striking the appropriate balance between Plaintiff's privacy interest and the right of the Defendants to defend themselves in this action, this Court cannot allow Plaintiff to assert a claim for emotional distress damages and simultaneously disallow Defendants to discover information into the possible causes of that stress. Therefore, Defendants may take discovery from Plaintiff on these sensitive issues. The Court, however, will not allow Defendants to engage in a baseless fishing expedition against Plaintiff. Doe v. City of Chula Vista, 196 F.R.D. 562, 570 (S.D.Cal. 1999) ("scope of discovery into this sensitive area should be limited and confined to that information that is essential to a fair trial.") As such, the entirety of Plaintiff's medical history should not be subject to disclosure, and the scope of Defendants inquiry must be appropriately limited to whether and to what extent the alleged drug use and concurrent investigations caused Plaintiff to suffer emotional harm. See, e.g., Bridges v. Eastman Kodak Co., 850 F.Supp. 216, 223 (S.D.N.Y. 1994); Doe, 196 F.R.D. at 570.

*C. Sanctions*

In their motion, Defendants have requested sanctions against Plaintiff. However, there remains fluidity among federal courts regarding the circumstances in which psychotherapist-patient waiver is effectuated by claiming emotional distress damages in a lawsuit. Furthermore, there has been no decision by either the Supreme Court or the Third Circuit clarifying this particular issue. Thus, the Court will not impose sanctions against Plaintiff.

## Conclusion

For the foregoing reasons, Defendants' motion will be granted. Plaintiff will be ordered to either produce her past and present medical and psychotherapy records, or have her claims for emotional distress stricken. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DENISE MCKINNEY** : | |
| : | **CIVIL ACTION** |
| **Plaintiff,** : | |
| : | **NO. 08-1054** |
| v. : | |
| : | |
| **DELAWARE COUNTY MEMORIAL** : | FILED |
| **HOSPITAL, ET AL.** : | |
| : | MAR 2 0 2009 |
| **Defendants.** : | |
| | MICHAEL E. KUNZ, Clerk |
| | By_____Dep. Clerk |

**Order**

AND NOW, this 20th day of March, 2009, upon consideration of Defendants' Delaware County Memorial Hospital and Crozer-Keystone Health System, Inc.'s Motion to Compel an Executed Medical Authorization and Plaintiff's Response to Discovery Requests Related to Her Medical Records (Doc. 17), and Plaintiff's Response in Opposition to (Doc. 19), **IT IS HEREBY ORDERED AND DECREED** that Defendants' Motion is **GRANTED.**

**IT IS FURTHER ORDERED** that:

1) Plaintiff shall supplement her discovery responses and produce the names of all past and present psychological, psychiatric and other relevant medical providers from whom Plaintiff has sought treatment within ten (10) days of the date of this Order, accompanied by a signed authorization for the release of all such records;

2) Any information obtained through discovery by defense counsel concerning Plaintiff's medical records or personal history shall be treated as confidential information to be utilized in and solely for the purpose of this litigation. The information shall not be divulged to any employee or officer of Defendants without prior approval of either Plaintiff's counsel or of this Court.

**IT IS FURTHER ORDERED** that if Plaintiff fails to comply within ten (10) days of the date of this Order, her claim for emotional distress damages shall be stricken.

**IT IS FURTHER ORDERED** that the Defendants' motion for sanctions pursuant to Fed.R.Civ.P. 37 is **DENIED**.

BY THE COURT:

_____
Hon. Petrese B. Tucker, U.S. D. J.